```
                  UNITED STATES BANKRUPTCY COURT
                 FOR THE NORTHERN DISTRICT OF IOWA


IN RE:                            )
                                  )   Chapter 11
GILBERTSON RESTAURANTS, LLC,      )
et al.                            )
                                  )   Bankruptcy No.  04-00385
     Debtors.                     )                   04-00384
                                  )                   04-00386
_____ )                   04-00387
FL RECEIVABLES TRUST 2002-A       )
                                  )   Adversary No.   04-9061
     Plaintiff,                   )
                                  )
vs.                               )
                                  )
GILBERTSON RESTAURANTS, LLC,      )
et al.                            )
                                  )
     Defendants.                  )
```

**ORDER RE MOTION TO DISMISS ADVERSARY PROCEEDING**

This matter came before the undersigned on September 27, 2004. Attorneys Paul Battista and Donald Neiman appeared for Defendant Burger King Corporation ("BKC"). Attorneys Christopher F. Graham and Eric W. Lam appeared for Plaintiff FL Receivables Trust 2002-A (the "Trust"). After hearing arguments of counsel, the Court took the matter under advisement. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K).

**STATEMENT OF THE CASE**

The Trust's underlying complaint seeks a determination of the security and priority of its claims and liens. It alleges that Debtors identify the Trust's claims as disputed, question the veracity of some guaranties and may attack the validity of liens or guaranties. In addition, the Trust states that BKC has been investigating causes of action for equitable subordination of the Trust's claims. The Trust seeks a decision that any objections or defenses of Debtors or BKC be denied.

BKC moves to dismiss.  It asserts that the Trust's apprehension that a controversy with BKC may arise is insufficient to establish a "case or controversy" as required by the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, and Article III of the Constitution.  BKC has made no claims against the Trust as of the time of the hearing.

The Trust resists the Motion to Dismiss.  It asserts that BKC objected to the Trust's Motion to Dismiss, Convert or Appoint Trustee filed in Debtors' bankruptcy case, stating it may have claims against the Trust.  The Trust is hereby attempting to meet those claims "head on" by seeking judgment pursuant to the Declaratory Judgment Act.  It argues BKC's "intent to fully prosecute" potential claims against it gives rise to an actual case or controversy.  The Trust argues that adjudicating BKC's claims is related to this action's attempt to determine the validity, extent and priority of the Trust's liens as between the Trust and Debtors.

The Trust quotes a portion of BKC's Objection to the Trust's Motion to Dismiss or Convert filed in the bankruptcy case file.  The quote comes from paragraph 10 of the Objection, which states in full:

> 10.  Lastly, BKC is very concerned and disturbed by the unprofessional and unprovoked comments and conduct of certain representatives of the FL Receivables Trust in their pre-petition dealings with the Debtors, including, inter alia, threats and assertions made by such representatives at a June 17, 2003 meeting in New York between the Debtors and FL Receivables Trust, many of which threats and assertions were directed at BKC and several other of BKC's franchisees. (See Objection at 12-13). BKC is presently investigating such threats and conduct and is propounding discovery against the FL Receivables Trust to determine the extent of any claims and/or causes of action BKC may have against FL Receivables Trust, including but not limited to, causes of action for equitable subordination of FL Receivables Trust's claim in these Chapter 11 cases pursuant to 11 U.S.C. § 510(c) and/or tortious interference with advantageous contractual relations and business relationships between BKC and the Debtors as well as BKC and other Burger King franchisees. BKC intends to fully prosecute any and all claims and causes of

2

action available to it in connection with the actions, conduct and threats of the FL Receivables Trust and its representatives.

BKC's Objection refers to Debtors' Objection to the Trust's Motion to Dismiss or Convert, at pages 12-13, which states:

> 29.  None of the FL Receivables Trust's actions, either prior to or throughout this bankruptcy, have been in furtherance of the best interests of the Estate or the creditors of the Estate. The Dismissal Motion is simply part of FL Receivables Trust's strategy to slow up the confirmation process and to force Burger King® Corporation to buy its loans and those of other FL Receivables Trust borrowers who are Burger King franchisees, with no evidence of any benefit to the Estate. In the deposition of Perry Beaton, Todd Gilbertson and Kathy Frerichs (the "Deponents"), the Deponents testified about a meeting they had in New York with FL Receivables Trust on June 17, 2003. The purpose of the meeting was for the Company to ask FL Receivables Trust to work with the Company in some way to modify the Company's amortization schedules or help to resolve its financial situation because the Company could not continue to make its payments. FL Receivables Trust represented to the Company both at the meeting and on several occasions afterward that FL Receivables Trust would accept nothing less than "100 cents on the dollar," or payment in full immediately. Mr. Ed Schwartz with FL Receivables Trust stated that FL Receivables Trust had loans with several Burger King® franchisees in the Midwest, including the Debtors, which he considered to be "all cr*p." He threatened the Debtors numerous times that the Company would suffer unless Burger King® paid off FL Receivables Trust. Mr. Schwartz stated that he would tear down the Burger King® sites and turn them into "used car lots." He also stated: "I've done it before, I'll do it again. I'm very eager to do this because Burger King is not supporting these people they way they need to be supported...Burger King is going to pay me off. These people (the Debtors) are going to suffer. I hate to do it to them, but I will do what I have to

do to protect my property." Mr. Schwartz also referenced the afore-mentioned FL Receivables Trust "cr*p" loans made to Burger King® franchisees in the Midwest, and stated that none of these Burger Kings® would remain Burger Kings®. He would create a hole in the Midwest, "like a donut," and there would be no Burger Kings® in the Midwest.

## CONCLUSIONS OF LAW

As grounds for dismissal, BKC asserts that no actual case or controversy exists upon which the Trust would be entitled to declaratory judgment in this case.  Such an allegation is treated as a challenge to subject matter jurisdiction.  See Med-Tec, Inc. v. Kostich, 980 F. Supp. 1315, 1320 (N.D. Iowa 1997).  For the court to dismiss for lack of subject matter jurisdiction under  Federal Rule of Civil Procedure 12(b)(1), the complaint must be successfully challenged on its face or on the factual truthfulness of its averments.  Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993).  If the complaint is challenged on its face, the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction.  Id.  If the defendant makes a factual challenge to subject matter jurisdiction, the court may consider matters outside the pleadings such as affidavits and deposition testimony in order to determine the factual dispute.  Id.; Osborn v. United States, 918 F.2d 724, 730 (8th Cir. 1990).  The plaintiff has the burden of proof that jurisdiction does in fact exist. Osborn, 918 F.2d at 730.

Here, BKC is making a factual challenge to the Court's subject matter jurisdiction.  It asserts no case or controversy exists under the Declaratory Judgment Act or under Article III of the Constitution.  The Complaint asserts BKC has been investigating and intends to fully prosecute claims against the Trust, including "causes of action for equitable subordination of FL Receivables Trust's claims" in Debtors's bankruptcy cases.  BKC denies that this is sufficient to constitute an actual controversy to support subject matter jurisdiction.

With the foregoing standards in mind, the Court will consider the Motion to Dismiss and the Trust's objections thereto, the Complaint, statements by counsel at the hearing,

4

and the Trust's Motion to Dismiss or Convert filed in Debtors' bankruptcy cases, as well as objections thereto.  These are all part of the record or court files.  No other evidence has been offered.

### ACTUAL CONTROVERSY

The Declaratory Judgment Act provides that "in a case of actual controversy", a federal court "may declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C. § 2201(a).  The requirement of an "actual controversy" is no more than a recognition that the Constitution limits the exercise of judicial power to "cases" and "controversies" in the constitutional sense.  Sherwood Medical Indus., Inc. v. Deknatel, Inc., 512 F.2d 724, 726 (8th Cir. 1975).

> Thus, to seek a declaratory judgment, the plaintiff's claim must be ripe.  The doctrine of ripeness is basically a matter of timing, which requires (1) a sufficiently concrete case or controversy within the meaning of Article III of the Constitution, and also, (2) prudential considerations must justify the present exercise of judicial power.  In other words, to satisfy the actual controversy requirement of the Declaratory Judgment Act, there must exist a substantial controversy between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.  A live dispute must exist between the parties at the time of the court's hearing.

Gopher Oil Co. v. Bunker, 84 F.3d 1047, 1050 (8th Cir. 1996) (citations omitted).  The distinction is between a case appropriate for judicial determination on the one hand, and a difference or dispute of a hypothetical or abstract character on the other.  Sherwood Medical, 512 F.2d at 727.

A court's decision to dismiss a declaratory judgment action is given unique and substantial discretion.  County of Mille Lacs v. Benjamin, 361 F.3d 460, 464 (8th Cir. 2004).  Declaratory judgment is discretionary in a strong sense, probably because it can be used to seize the forum from the natural plaintiff.  Hyatt Int'l Corp. v. Coco, 302 F.3d 707, 711 (7th Cir. 2002).

Courts recognize that, under certain carefully circumscribed circumstances, actual or implied threats of litigation can constitute a real and immediate controversy sufficient to convey declaratory judgment jurisdiction. <u>In re Chateaugay Corp.</u>, 201 B.R. 48, 67 (Bankr. S.D.N.Y. 1996). The threat of suit, no matter how immediate, is not by itself sufficient for the invocation of the federal power to issue a declaratory judgment. <u>Hyatt Int'l</u>, 302 F.3d at 712. The Declaratory Judgment Act "is not a tactical device whereby a party who would be a defendant in a coercive action may choose to be a plaintiff by winning the proverbial race to the courthouse." <u>Id.</u> A federal court will not start up the "machinery of adjudication" to repel an entirely speculative threat. <u>PHC, Inc. v. Pioneer Healthcare, Inc.</u>, 75 F.3d 75, 79 (1st Cir. 1996).

> [In] the usual declaratory judgment pattern,. . . the "natural" defendant wants to proceed with a business opportunity--e.g., the production of widgets--but it is impeded because of a lack of clarity as to its legal rights, fearing something like a possible patent infringement suit. . . . Early resolution of a threat of litigation, in a friendly forum, is no doubt of value to a potential defendant, but the statute requires an "actual" controversy. That is easily seen in the patent example cited above, because the natural defendant is prevented from engaging in some extra-judicial conduct (that the law does not aim to discourage) as long as its patent rights are unclear.

<u>Hyatt Int'l</u>, 302 F.3d at 711. The court in <u>Hyatt International</u> asked what harm the plaintiff would suffer by waiting for the defendant to sue. <u>Id.</u> Fitting within the "usual declaratory judgment pattern" is not a necessary condition to the existence of an "actual controversy" under the Declaratory Judgment Act, but its absence suggests the petition is jurisdictionally vulnerable. <u>Cohen v. Orthalliance New Image, Inc.</u>, 252 F. Supp. 2d 761, 767 (N.D. Ind. 2003).

## ANALYSIS

This action is not similar to the usual declaratory judgment. BKC stated it is investigating claims or causes of action against the Trust, based on the Trust's prepetition conduct, specifically at a June 17, 2003 meeting. Thus, BKC

has alleged that the Trust's prepetition conduct was reprehensible and it is investigating whether it is actionable. This is essentially the only statement upon which the Trust relies to establish there is an actual controversy over which the Court has subject matter jurisdiction.

Several considerations are important to this analysis. First, Defendant in question here is not Debtor. Therefore, this alleged controversy involves two parties, neither of which is Debtor. Secondly, FL Receivables Trust, Plaintiff in the present case, is not a "natural" Plaintiff based on the facts presented. In an ordinary lawsuit, the Trust would be a defendant.

The Court has carefully considered all the facts presented to it and it is the conclusion of this Court that there is not a sufficient present controversy to satisfy the present exercise of this Court's jurisdictional power. The Trust has made no showing of immediacy. There is no showing made that any negative consequences will be suffered by the Trust if a forum is not immediately provided. The Trust points out that dismissing BKC from this action would result in its possibly having to respond to a second lawsuit. However, this is not the type of consequence which is controlling in a determination of whether or not the Court should take jurisdiction and adjudicate the rights of parties.

In its simplest form, the allegations in this case establish that the Trust allegedly made statements to BKC which BKC found to be offensive. BKC notified the Trust that it was investigating these comments and intended to "fully prosecute any and all claims and causes of actions available to it in connection with the" conduct of the Trust. The Trust states that it wishes to meet BKC's possible claims "head on". The Court is not satisfied that it understands what that means. What is clear, based on these facts, is that BKC is the natural Plaintiff. It has asserted that it is investigating certain conduct to determine if it is actionable. As of the time of hearing, BKC has not initiated any litigation arising from these facts.

No case or controversy exists unless BKC elects to take action against the Trust. To allow the Trust to determine the field of battle and ask this Court to adjudicate issues initiated by it, frankly strikes this Court as pointless. At the present time, BKC has not indicated that it has completed

7

its "investigation". It has not indicated to the Court that it, in fact, intends to pursue any claims. BKC has not indicated, with any specificity, what form those claims would take. There are references to subordination of claims. There is also discussion of potential tort claims such as interference with business relationships. Because of this pervading vagueness, it is not possible to conclude that there is a sufficient controversy to overcome a jurisdictional challenge. In fact, it is impossible to state that there is a controversy at all. BKC may determine, upon further investigation, that it either has no cause of action or may elect for numerous reasons not to pursue a valid cause of action.

The assumption of jurisdiction would have two consequences; neither of which is beneficial to the Court or the parties. First, the Court would be caught in a quagmire of issues about which it could only speculate because of the vagueness of the entire issue. The resources of the judicial system would be invoked with no possibility of an adequate resolution. Secondly, assuming jurisdiction would result in a complete reversal of the roles of Plaintiff and Defendant in a traditional sense. It would allow the Trust to elect the forum in which to litigate its own alleged bad conduct.

As stated earlier, neither of these parties is Debtor. If BKC determined that it has a cause of action, it could elect to bring the action in State or Federal court in any number of venues. To assume jurisdiction would allow the Trust to pick the time and place of the adjudication of its conduct. In short, it would turn the entire adjudicative process on its head and allow a potential defendant to become a plaintiff in contravention of the traditional process in determining rights of parties. A similar discussion was held in <u>Cunningham Brothers, Inc. v. Bail</u>, 407 F.2d 1165, 1168 (7th Cir. 1969) which states:

> Thus, there is good reason for the noted lack of precedent supporting plaintiff's position. To allow a declaratory judgment action under the facts before us would be to allow a substitute for the traditional procedures for adjudicating negligence cases. We agree with the concusion reached in <u>Sun Oil Co. v. Transcontinental Gas Pipe Line Corp.</u>, 108 F.Supp. 280, 282 (E.D.Pa. 1952), <u>aff'd</u> (adopting opinion of district court), 203 F.2d 957 (3rd Cir.

    1953), that "it is not one of the purposes of the declaratory judgment acts to enable a prospective negligence action defendant to obtain a declaration of non-liability."

    To so reverse the roles of the parties would affect more than merely the form of action, but would jeopardize those procedures which the law has traditionally provided to injured parties by which to seek judicial relief. Although "[t]he existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate," Rule 57, Fed.Rules Civ. Proc., we hold that such relief is inappropriate in the instant case since "more effective relief can and should be obtained by another procedure." <u>Chicago Metallic Mfg. Co. v. Edward Katzinger Co.</u>, 123 F.2d 518, 520 (7th Cir. 1941).

In summary, the cases are replete with authority holding that the trial court is granted substantial discretion in determining the use of declaratory judgments and the Declaratory Judgment Act. While the rules relating to declaratory judgments seem to be somewhat uncertain, each case analyzes the unique facts of that case to ensure that the Court is not asked to act upon vague and hypothetical facts. The Court only assumes Declaratory Judgment Act jurisdiction when it can achieve a result which provides a positive benefit to the parties or avoids a well-defined injury. In the present case, the Court can determine no situation which would affirmatively benefit the parties nor can it conclude that any significant harm would befall either party by using judicial restraint. At present, it is impossible to state that a cause of action will ever accrue.

    As such, in its discretion, this Court concludes that whatever controversy exists between BKC and the Trust as set out in paragraph 45 of the complaint is not an "actual controversy" as defined by the Declaratory Judgment Act. It is the ultimate conclusion of this Court that the Trust has failed to establish, to this Court's satisfaction, that this Court has subject matter jurisdiction under Article III of the Constitution. The Motion to Dismiss must be granted.

## **RULE 9011**

By signing and filing papers in this court, counsel for FL Receivables Trust 2002-A are representing that the filings are not being presented for any improper purposes and are well-grounded in fact and law.  Fed. R. Bankr. P. 9011(b).  The bankruptcy court has the discretion and jurisdiction under Bankruptcy Rule 9011 to assess attorney's fees as sanctions against attorneys who fail to comply with the rule.  In re Clark, 223 F.3d 859, 864 (8th Cir. 2000).  The Court can impose sanctions on its own initiative.  Fed. R. Bankr. P. 9011(c)(1)(B).  The established standard for imposing sanctions is an objective determination of whether a party's conduct was reasonable under the circumstances.  In re Mahendra, 131 F.3d 750, 759 (8th Cir. 1997) (noting cases interpreting Rule 11 are applicable to Rule 9011 cases).  Improperly naming a party in a suit justifies Rule 11 sanctions when "joining the party [is] baseless or lacking in plausibility."  Black Hills Institute of Geological Research v. South Dakota School of Mines and Technology, 12 F.3d 737, 745 (8th Cir. 1993).  Rule 11 is violated when a party invokes the jurisdiction of the federal courts without justification.  Charland v. Little Six, Inc., 112 F. Supp. 2d 858, 862 (D. Minn. 2000).

This Court has made no determination whether the conduct of the Trust and counsel in naming BKC in this adversary proceeding comes within the reasonableness standard as defined in Rule 9011.  However, the Court is concerned that cause may exist to sanction the Trust or counsel for filing a frivolous claim against BKC for the purposes of increasing costs in this bankruptcy case.  Rather than act on its own initiative, the Court concludes that any Rule 9011 sanctions may be sought by BKC, if it so chooses.

**WHEREFORE**, Burger King Corporation's Motion to Dismiss Adversary Complaint as to Burger King Corporation is GRANTED.

**FURTHER**, Burger King Corporation is dismissed as a party in this action based on the lack of subject matter jurisdiction or an actual controversy.

**FURTHER**, Burger King Corporation is given the choice to request Rule 9011 sanctions against the Trust.

**SO ORDERED** this 12th day of October, 2004.

_____
PAUL J. KILBURG
CHIEF BANKRUPTCY JUDGE